CHARLES McGOWEN, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

427 S.W.2d 555.

(*Jackson*, April Term, 1967.)

Opinion filed March 8, 1968.

Petition for Rehearing Denied May 10, 1968.

Galloway & Clinton, Memphis, for plaintiff in error.

George F. McCanless, Attorney General, and Robert H. Roberts, Assistant Attorney General, Nashville, for defendant in error.

Phil M. Canale, Jr., District Attorney General, Memphis, prosecuted case in trial court.

Mr. Justice Creson delivered the opinion of the Court.

This record presents an appeal in error from a judgment of conviction of the crime of arson rendered in the Criminal Court of Shelby County. The parties will be referred to herein as they appeared in the lower court; that is, plaintiff in error Charles McGowen as defendant, and defendant in error as the State.

The defendant was indicted on March 6, 1964, for feloniously setting fire to, and burning, an automobile belonging to Carmen David Johnson and Geneva O. Davis. The case was continued from term to term until it was finally tried on October 3, 1966. On October 4, 1966, the jury found the defendant guilty of arson and

sentenced him to serve not more than five years in the State Penitentiary.

Thirty-three assignments of error are filed on this appeal. These assignments were consolidated into eight subjects of argument by the defendant, and were answered as such by the State. We will not consider each assignment individually in this opinion, but will likewise address ourselves to the eight major arguments.

■ The defendant first argues that the evidence preponderates against the verdict of the jury and in favor of his innocence; and that the verdict is not supported by the law or the evidence. In considering these assignments of error, this Court must look to the well established law of this State regarding review of criminal cases; that is, that a jury's verdict of guilty, approved by the trial judge, establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attached to the defendant in the trial court, and raises a presumption of guilt; putting on defendant the burden of showing, on appeal, that the evidence preponderates against the verdict and in favor of the innocence of the accused. *Cooper v. State* (1909) 123 Tenn. 37, 138 S.W. 826; *Holt v. State* (1962) 210 Tenn. 188, 357 S.W.2d 57; *McBee v. State* (1963) 213 Tenn. 15, 372 S.W.2d 173.

The State's proof showed: (1) that there existed some animosity between the defendant and the owners of the automobile and other members of the owners' family; (2) that the automobile was doused with gasoline and set afire shortly after midnight on February 17, 1964; (3) that the defendant had been seen on the street near the automobile shortly before the fire; (4) that a red-

and-white Chevrolet was seen speeding away from the scene immediately after the fire began, and that the defendant and a co-defendant were seen shortly thereafter at a nearby drive-in restaurant, occupying a similar red-and-white Chevrolet; (5) that the defendant and the co-defendant were apprehended by the police when they drove away from a Fire Inspector who was attempting to question them because of their suspicious activities; (6) that the co-defendant confessed the crime when taken into custody and later testified, at the trial, to substantially what had been previously stated in his written confession; and (7) that the damage to the automobile was estimated at approximately $140.00.

■ The defendant testified that he was not present when the fire was set and offered an alibi in support of this statement to the effect that he was in a restaurant with his brother. He further testified that he drove to the scene of the crime shortly thereafter, the arrest occurring at that time. Witnesses testified that the defendant was in the restaurant on the night in question; however, none of these witnesses could testify as to the exact time of his presence in the restaurant. Our examination of the record in this case requires us to conclude that the defendant has not overcome the presumption of guilt. This he must do to maintain this claim of error on appeal.

■ The defendant strongly urges that the State failed to prove an essential element of the crime, that being the true ownership of the property. The indictment listed the owners as *Carmen* David Johnson and Geneva O. Davis; whereas, the testimony indicated that the car was owned by *Karl* or *Karlton* David Johnson and Geneva Davis. A review of the record shows that the title owner-

ship was in Geneva Davis, since Carmen or Karl David Johnson was a minor when the automobile was purchased for him. Any discrepancy as to the proper given name of the special owner would not constitute a fatal variance between the indictment and the conviction; nor would the inclusion of a surplus initial make the indictment defective. 42 C.J.S. Indictments and Information sec. 265; 5 Wharton's Criminal Law and Procedure (10th Ed.— 1957) secs. 2064, 2065, 2067; 27 Am.Jur.2d 641-646 (Indictments and Information, secs. 79-83).

The defendant next asserts that he was denied a speedy trial, in violation of the Tennessee and Federal Constitutions. It is true that two and one-half years elapsed between the indictment and the trial. The case was initially set for trial on March 24, 1964. Just prior to that date, the co-defendant, Thompson, disappeared from the jurisdiction. At that point, the record reveals the case was continued, by consent of both parties, until the co-defendant could be re-apprehended. Thereafter, the case was continued from term to term, without objection, until co-defendant Thompson was returned to the Shelby County jail in May, 1966. The State requested and received one continuance after Thompson's return; and the defendant requested and received one continuance in the same period.

█ The constitutional right to a speedy public trial was not denied in this case. The first continuance was by consent; the defendant made no request for a trial during the interim period; and the issue was not raised before or during the trial. The fact that the defendant was deprived of the alibi testimony of his brother, who died in December, 1965, does not affect this conclusion.

■■ The third argument insists that there was prejudicial error in admitting evidence of numerous acts of alleged misconduct and commission of offenses completely unrelated to that for which the defendant was being tried. Proof in a criminal prosecution which tends to show that the accused is guilty of the commission of other crimes and offenses is generally incompetent and inadmissible for the purpose of proving the commission of the particular crime charged. 29 Am.Jur.2d 366 (Evidence, sec. 320); *Liakas v. State* (1956) 199 Tenn. 298, 286 S.W.2d 856. There are, however, numerous exceptions to this rule. For example, evidence may be introduced of other crimes or acts of misconduct to show (1) motive, (2) guilty knowledge, (3) intent, or (4) identity. *Caruthers v. State* (1966) 219 Tenn. 21, 406 S.W.2d 159; *Sykes v. State* (1903) 112 Tenn. 572, 82 S.W. 185. See also McCormick on Evidence (1954), sec. 157; 29 Am.Jur. 2d 369-378 (Evidence, secs. 321-326).

■ In the present case, the defendant objected to questions directed toward members of the car owners' family regarding acts of violence allegedly committed by the defendant. The trial court allowed this testimony into evidence, since it could tend to establish an intent or motive for the offense of burning the car. Testimony regarding unnatural sex activities between the defendant and a member of the car owners' family was also permitted for the same reason. All of this testimony was permissible for consideration of the question of motive for the crime and malicious intent on the part of the defendant.

■ On cross-examination, the defendant was asked several questions regarding his homosexual activities,

generally. In the context in which these questions were asked, and the answers given, it is obvious that they were offered for the purpose of impeaching the credibility of the defendant by attacking his character. They were not incompetent.

■■■ The defendant further contends that the court erred in allowing a question to the co-defendant on direct examination by his counsel regarding the defendant's unnatural advances toward the co-defendant. This question was apparently to contradict the defendant's. response to a question asked him on cross-examination for the purpose of impeaching his credibility. There are, by necessity, limitations on the use of character-impeachment, by proof of misconduct. One limitation is that, where the witness denies the collateral misconduct, the examiner is bound by the answer and may not introduce other evidence to contradict this response. The admission of this testimony, over objection, was error; but in the light of the content of the record on the same subject, other and different from this, we cannot conclude that such error was reversibly prejudicial.

■■■ The defendant also objects to the allowance of a question asked by the State to one of the defendant's character witnesses. The witness was asked whether he was aware that the defendant had forfeited a city appearance bond for soliciting males. This question was asked, not to prove its truth or falsity, but to test the witness' ability to give character testimony by ascertaining his good faith, information and accuracy. It was competent. 3 Wharton's Criminal Evidence (12th Ed.—1955) sec. 865, p. 253.

 It should be noted that in considering the admissibility of this evidence, the trial judge was involved in a process of balancing the technical competence of that evidence in comparison with its possible prejudicial effect against the defendant. It is obvious that, in this field, there are shifting degrees of relevancy; and it is thus only sensible that the appellate courts have seen fit to vest some discretion in the trial judge who faces the problem in the relative turbulence of the courtroom trial. In such cases, we should not, and do not, reverse for other than abuse of that discretion.

 The defendant asserts, in his fourth argument, that the court failed to instruct the jury on all of the lesser offenses included under the prime offense charged in the indictment. These assignments do raise the question of what portions of Title 39, Chapter 5, of T.C.A. were appropriate for incorporation in the charge. After hearing arguments of counsel and considering all of the Sections in that Chapter, the trial judge chose to instruct the jury only on T.C.A. sec. 39-504 and sec. 39-505, thus submitting the questions in the form of guilt or innocence of the defendant for the burning of a motor vehicle. The essence of defendant's contention now is that the court should also have given the jury the option of finding him guilty of T.C.A. sec. 39-502 or sec. 39-503. T.C.A. sec. 39-502 deals with setting fire to any personal property, and sec. 39-503 with attempts to burn property. The property ignited in this particular case was a motor vehicle. Since the car was actually burned, sec. 39-503 would not be applicable. T.C.A. sec. 39-504 specifically concerns itself with the burning of motor vehicles and other named items. It authorizes the jury to imprison from one day to seven years. T.C.A. sec. 39-505 concerns

the offense of setting fire to any material or thing mentioned in secs. 39-501 to 39-504.

■■■ By instructing on T.C.A. sec. 39-504 and sec. 39-505, the trial judge gave the jury the widest latitude possible for conviction and sentencing, in the event defendant was found guilty. In addition, where the court has before it two Code sections on the same subject matter, one of a general nature and one which is specific, the trial judge must select only the specific section on which to base the charge.

■■■■■ The defendant also asserts that it was error to fail to instruct the jury that the defendant could not be convicted on the uncorroborated testimony of an accomplice. It is true that the co-defendant was an accomplice, *Mounts v. State* (1964) 214 Tenn. 171, 191, 379 S.W.2d 34, 43, and the cases cited therein on this point; and that he did offer testimony adverse to the interests of the defendant. However, this testimony was offered in his own behalf as part of his testimony in his own defense, and not while appearing as a witness for the State. There is no legal obligation on the trial judge to initially charge the usual basic rule with respect to the weight, or lack of it, which may be given to the testimony of an accomplice, where the accomplice is not a witness for the State. 23A C.J.S. 567 Criminal Law sec. 1227. If, however, the record reflects other circumstances indicating the propriety of such a charge, even though the witness does not appear on the stand as one called by the State, a proper charge, timely requested, may well require the trial judge to instruct in this regard. It is further pertinent to note here that in the instant case there is an abundance of non-accomplice testimony, corroborative in

this record. 53 Am.Jur. 551 (Trial, sec. 739); 2 Wharton's Criminal Evidence (12th Ed.—1955) sec. 445, p. 223 (1966 Supp., p. 48).

By his fifth argument, the defendant complains that the trial court committed error by commenting on matters of fact and upon the weight of the evidence. This was supposed to have occurred when the trial judge instructed the jury on the rules for weighing evidence of (1) character, (2) alibi, (3) confessions, and (4) the testimony, generally. We have considered each of the instances set forth in the brief of defendant. We find that the trial judge's charge was complete and correct in this respect.

In his sixth argument, the defendant insists that the jury verdict inflicted cruel and unusual punishment, in violation of the Tennessee Constitution. This, for the reason that the defendant was sentenced to not more than five years in the State Penitentiary; and the co-defendant Thompson, while convicted of the same crime, was sentenced to only six months' imprisonment in the county workhouse. This disparity can be explained in that the jury heard testimony which could have led them to believe the defendant was the party who actually conceived and perpetrated the crime; while the co-defendant, Thompson, while aiding and abetting and thus accountable as a principal, was not tainted with that degree of guilt as was defendant McGowen. It was the jury's duty to fix the punishment, and we cannot say that the difference in sentences is legally interdicted.

Argument No. 7 is that defendant was deprived of effective representation and advice of counsel. The substance of this argument seems to be that the defend-

ant McGowen's attorney, at the trial of this case, had previously represented two of the witnesses who gave testimony against the defendant. As best we can derive it, the criticism is that this attorney did not assault the credibility of these witnesses with sufficient vigor. There is no dispute whatever but that this attorney was one privately chosen and retained by McGowen, himself. This is no more than a gratuitous condemnation of the attorney and, so far as the issues here are concerned, a complete irrelevance.

In argument No. 8, the defendant complains that it was error to allow certain statements of the defendant into evidence because they were allegedly made before he was advised of his constitutional right to remain silent. The principal statement put in issue was made to a Fire Inspector at the time a written confession given by the co-defendant Thompson was read to defendant McGowen. The defendant admitted, as true, certain parts of the confession, but denied all parts relating to the fire. At this time, the defendant had been in conference with his privately retained attorney. In addition, the statement made by the defendant could only be construed as a denial of the crime and not as any admission of anything really material. There was no error.

All of the assignments of error have been considered and are overruled. The judgment of the lower court is affirmed. The costs of this appeal are assessed against the plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.

On Petition to Rehear

Mr. Justice Creson.

Plaintiff in error, defendant below, has filed a petition to rehear in which he asserts that he is aggrieved by the opinion of this Court in thirteen different instances. The rule regarding petitions to rehear in this Court is that "A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked." Supreme Court Rule 32. None of the points raised by the defendant in his petition to rehear meet this test.

The defendant does make one argument, citing a prior decision which involves an inherently close question. Thus, we have chosen to re-examine that contention. It is that our holding the trial judge was not in error for failing to charge the jury on accomplice testimony constitutes a departure from the former opinion of this Court in *Ripley v. State* (1950) 189 Tenn. 681, 227 S.W.2d 26, 19 A.L.R.2d 1347.

The issue presented in *Ripley v. State,* supra, was whether or not a co-defendant lost legal status as an accomplice when acquitted by the jury. It was there held:

"But his acquittal did not effect his legal status as an accomplice witness. The law makes no distinction between an accomplice as a witness and the same individual as a defendant. *State v. Weston,* supra, 109 Or. 19, 219 P. 180; *State v. Case,* 61 Or. 265, 122 P. 304."

In the present case, the defendant McGowen's legal status is not in question—he was admittedly an accomplice. In addition to what was said in our original opin-

ion, we must point out that the thrust of the opinion in *Ripley v. State,* supra, simply does not reach this case.

After a full consideration of the contentions made, the petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.