NelsoN, J.,
delivered the opinion of the Court.
The indictment in this case, is founded upon the Code, 4628, which provides that “if any person assaults and beats another with a cowhide, stick or whip, having, at the time, in his possession, a pistol or other deadly weapon, with intent to intimidate the person assaulted, and prevent him from defending himself, he shall, on conviction, be imprisoned in the penitentiary r-'t less than two nor more than ten years.” It is charged, in the indictment, that James Brown and nine others therein named, “late of said county, laborers, on the tenth day of April, in the year of our Lord eighteen hundred and sixty-nine, with force and arms, in the county of Blount, aforesaid, unlawfully and feloniously, did assault and beat one Jacob Smith, in the peace of the State then and there being, with certain cowhides, sticks and whips, they, the said, then and there having in their possession certain pistols and other deadly weapons, with intent to intimidate him, the said Jacob Smith, and prevent him from defending himself, -&c.”
Six of the defendants named in the indictment, filed a general demurrer -thereto, which, on argument, was sustained. The Attorney General excepted to this action of the court, and prayed an appeal in the nature of a writ of error, to this court. The demurrer seems to have been treated as the demurrer of all the defendants, and they were all recognized to appear at this court. There is no formal joinder in demurrer on the part of the State, as required in 1 Wat. Arch. Cr. Pl., 382 top, 116, marg., and in 1 Chitty, Cr. Law, 359, in cases of *3 felony; but, tbe form of demurrer might be ore terms, even in capital cases, according to 1 Chit. Cr. Law, Riley’s edition, 359, top, 441, marg.
It is insisted, in behalf of the defendants, that the indictment does not charge the offense with certainty and precision, because their names are all omitted after the words “the said” or that, if these words are retained, it is obscure and unintelligible.
Ju'lge Whyte, in delivering the opinion of this court, in the case State v. Pearce, Peck R., 66, 67, said that it was observed, by that great Judge, Lord Hale, that “the strictness required in indictments had grown to be a great blemish and inconvenience in the law and the administration thereof; that more offenders escaped by the over-easy ear given to exceptions to indictments than by the manifestation of their innocence, and that the grossest crimes had gone unpunished by reason of these unseemly niceties.” He says further, that “Lord Mansfield maintains that, while tenderness ought always to prevail in criminal cases, yet it does not require such a construction of words as would tend to render the law nugatory and ineffectual, nor does it require of us to give into such nice and strained critical objections as are contrary to its true meaning and spirit.”
Such seems to have been the opinion of our State Legislature, at the time of the adoption of the Code, and much of the ancient strictness in criminal proceedings was abolished. Among other things, it is provided by section 5114, that “the statement of the facts constituting the offense, in an indictment, shall be in ordinary and concise language, without prolixity or repeti *4 tion; and by section 5117, that the act ©r omission charged as the offense, shall be stated, with such degree of certainty as to enable the court to pronounce judgment upon conviction, according to the right of the case.”
In 1 Chit. Cr. Law, 171, mar., it is stated that “the indictment must state the facts of the crime, with as much certainty as the nature of the case will admit.” Again, it is said, “if the sense be clear, nice objections ought not to be regarded;” and that “the word aforesaid,” in general, refers to the last antecedent, but not so invariably as the word same, which is moi’e explicit; and matter stated in parenthesis saves the rule of grammar; that the words — “the said” and “aforesaid” refer to the last antecedent, and it is not necessary to repeat the nominative case to all the allegations in one continuing sentence. Ibid, 173, m. The same author says, further, that “if the indictment can be supported without the words which are bad, they may, on arrest of judgment, be rejected as surplusage.” Ibid, 173, 174, m. And that, “if any unnecessary averments, not intimately connected with the circumstances which constitute the crime, be introduced, they meed not be proved on the trial, but will be rejected as surplusage.” Ibid, 232, m. In continuation of the same subject, he states, 237, m., that “where the contradictory, or repugnant expressions do not enter into the substance of the offense, and the indictment will be good without them, they may be rejected as sur-plusage.”
Applying these rules of criminal pleading, and the provisions of the Code, to the indictment under consideration, we declare the law to be, that it was not neces *5 sary to repeat the names of tbe defendants in the indictment, although the words "the said” would seem to indicate that such was the purpose of the draughtsman; that those words may be rejected as surplusage, and that the word “they,” which immediately precedes them, has distinct reference to, and upon any correct rule of grammatical construction can only mean, the defendants, whose names are stated in the previous part of the indictment. The words — “they, the said, having in their possession certain pistols,” &c. — so evidently refer to the persons previously named, that the meaning can not be considered as doubtful; and “clerical or grammatical errors will not vitiate an indictment, unless the meaning is obscured.” State v. Wimberly, 3 McCord, 190, cited in 1 Wat. Arch. Cr. Pl., 304, n. These views are further supported by the authorities cited in the same book, pp. 262, 300.
Let the judgment be reversed, and the plaintiffs be recognized to appear at the next term of the Circuit Court of Blount county, to answer the indictment.